# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

CITY OF PENSACOLA,

Plaintiff,

v.                                     Case No.3:16cv203-RV/CJK

EMERALD COAST UTILITIES
AUTHORITY; U.S. DEPARTMENT OF
TRANSPORTATION, FEDERAL
AVIATION ADMINISTRATION; and
MICHAEL PETER HUERTA, in his official
capacity as Administrator of the Federal
Aviation Administration,

Defendants.

_____

# FEDERAL DEFENDANTS' MEMORANDUM IN SUPPORT OF
# MOTION TO DISMISS

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................1

BACKGROUND ..................................................................................2

STATEMENT OF FACTS ...................................................................6

ARGUMENT ......................................................................................8

I.   THE CITY'S COMPLAINT AGAINST THE FAA SHOULD BE
DISMISSED FOR LACK OF SUBJECT MATTER
JURISDICTION ..........................................................................8

    A. The City Has Not Met its Burden of Showing Standing ........................9

       1. The City Has Not Incurred an Injury in Fact .........................9

       2. The City Has Not Established That Any Injury Was
Caused by the FAA..................................................................12

       3. A Favorable Ruling Is Not Likely to Redress Any Injury.................13

    B. There is No Waiver of Sovereign Immunity for the City's
Claim Against the FAA .......................................................15

    C. The City's Allegation of Preemption as a Defense Cannot Be
the Basis for Subject Matter Jurisdiction...............................17

    D. The Declaratory Judgment Act Does Not Provide a Basis for
Subject Matter Jurisdiction ................................................19

    E. The City Cannot Circumvent the Requirement of Article III
Jurisdiction by Alleging that the FAA is a Necessary Party ................19

II.  THE COMPLAINT FAILS TO STATE A CLAIM AGAINST
THE FAA ..................................................................................23

    A. The City Fails to Identify Any FAA Action as the Basis for
its Claim.........................................................................24

    B. The Declaratory Judgment Act Does Not Provide a Basis for
a Claim Against the FAA.....................................................25

CONCLUSION .................................................................................26

Defendants United States Department of Transportation, Federal Aviation Administration and Michael Peter Huerta in his official capacity as Administrator of the Federal Aviation Administration (collectively "FAA") respectfully submit this memorandum of law in support of their motion to dismiss the complaint as to the FAA for lack of subject matter jurisdiction and for failure to state a claim for which relief can be granted.

## PRELIMINARY STATEMENT

A plaintiff attempting to sue a federal agency that can identify no waiver of the government's sovereign immunity and that alleges no injury at the hands of the government defendant, cannot rely on Rule 19 of the Federal Rules of Civil Procedure as a hook to establish a federal court's subject matter jurisdiction. In this case, where the Plaintiff City of Pensacola ("the City") identifies a real estate dispute between itself and a local water authority relating to the ownership of some water wells located at the Pensacola Airport and hypothesizes that the FAA might want the City to take certain action if it turns out that the City's position in that dispute is correct, Plaintiff's complaint against the FAA is based on nothing more than a misunderstanding of Rule 19. The Court should dismiss the FAA from this litigation because City of Pensacola does not identify any relief that it might legitimately obtain as against the FAA or any theory on which it might be entitled to such relief; rather, the sole count in the complaint is directed, at most, at the

other defendant, the Emerald Coast Utilities Authority ("ECUA").  The Court has multiple alternative bases on which to dismiss the claim against the FAA: (1) the City does not have standing because it has not suffered any injury and certainly no injury that can be traced to the FAA or that could be redressed by an order against the FAA; (2) the federal government has not waived sovereign immunity in any way that applies to this case, particularly given that this case has nothing to do with any final agency action, a jurisdictional prerequisite under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, the only waiver of sovereign immunity that might even theoretically apply here; (3) the Declaratory Judgment Act, 28 U.S.C. § 2201, cannot be the basis for a federal claim or federal question jurisdiction; and (4) the City does not dispute any action or statement by the FAA and therefore has not stated a claim upon which relief can be granted.  Plaintiff's reliance on Rule 19 in an attempt to explain why it named the FAA as a defendant does not remedy these flaws in the complaint.  Accordingly, the Court should dismiss the complaint against the FAA under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6).

## BACKGROUND

The FAA is an operating administration within U.S. Department of Transportation ("DOT") which has been delegated many of DOT's responsibilities

discussed herein.  *See* 49 U.S.C. § 106.  Congress has long authorized the

allocation of federal funds for the improvement of the nation's airports.  *See*, *e.g.*,

Federal Airport Act, Pub. L. No. 79-377, 60 Stat. 170 (1946); Airport and Airway

Improvement Act of 1982 ("AAIA"), Pub. L. No. 97-248, Title V, 96 Stat. 324.

Because these funding programs are intended to promote the public interest,

Congress has sought to ensure that airports receiving other revenues from use of

the airport put those revenues back into the airport.

A "sponsor" is the owner or operator of the airport that applies to DOT for

grants.  49 U.S.C. § 47102 (26).  An airport sponsor cannot receive a federal

Airport Improvement Program ("AIP") grant unless it makes a number of "written

assurances" to the FAA.  49 U.S.C. § 47107(b).  The assurances are included in a

standard list appended to every AIP grant agreement.  *See*

http://www.faa.gov/airports/aip/grant_assurances/media/airport-sponsor-

assurances-aip.pdf.  One such assurance is that "revenues generated by a public

airport will be expended for the capital or operating costs of – (A) the airport."

§ 47107(b)(1).  Correspondingly, "revenues generated by an airport that is the

subject of Federal assistance may not be expended for any purpose other than the

capital or operating costs of – (1) the airport."  49 U.S.C. § 47133(a).  The grant

assurance underlying this litigation provides, in relevant part:

3

**25. Airport Revenues**
**a.** All revenues generated by the airport . . . will be expended by it for the capital or operating costs of the airport; the local airport system; or other local facilities which are owned or operated by the owner or operator of the airport and which are directly and substantially related to the actual air transportation of passengers or property; or for noise mitigation purposes on or off the airport.

http://www.faa.gov/airports/aip/grant_assurances/media/airport-sponsor-assurances-aip.pdf   The FAA has also issued Policy and Procedures Concerning the Use of Airport Revenue ("Revenue Use Policy") that make clear that water on airport property is a revenue-generating resource, thus any revenue generated from the water must be reinvested in the airport:

> The Final Policy retains the proposed definition of airport revenue to include the sale of sponsor owned mineral, natural, agricultural products or water to be taken from the airport . . . . mineral and water rights represent a part of the airport property and its value.  Just as proceeds from the sale or lease of airport property constitute airport revenue, proceeds from the sale or lease of a partial interest in the property—*i.e.* water or mineral rights—should also be considered airport revenue.

64 Fed. Reg. 7696; 7702 (February 16, 1999); *see also* 64 Fed. Reg. at 7716 (Airport revenue includes revenue received "For the sale of (or sale or lease of rights in) sponsor-owned mineral, natural, or agricultural products or water to be taken from the airport.").  The FAA requires that the airport sponsor receive "fair market value for the provision of nonaeronautical facilities and services . . . ." *Id.* at 7721.  A failure to comply with these requirements can be "revenue diversion,"

4

which is defined as "the use of airport revenue for purposes other than the capital or operating costs of the airport . . . ."  *Id.* at 7720.

Grant assurances also subject airport sponsors to restrictions on conveying airport property.  *See* 49 U.S.C. §§ 47107(a)(16)(D), 47151-53. The property must be "surplus" to the requirements of the airport, 49 U.S.C. § 47151, and the Secretary of Transportation must certify that the conveyance "can be used, leased, salvaged, or disposed of without materially and adversely affecting the development, improvement, operation, or maintenance of the airport at which the property is located."  49 U.S.C. § 47152.

If an airport sponsor accepts an AIP grant, but then fails to comply with one of the grant assurances, the FAA may conduct an administrative proceeding against the airport.  *See* 49 U.S.C. §§ 47106, 47111, 47122; 14 C.F.R. § 16.1(a)(5) (2013).  Such a proceeding can be about airport revenue diversion.  *See* 64 Fed. Reg. at 7722.  Such proceedings commence either when a third party files an administrative complaint against the airport, *see* 14 C.F.R. § 16.23(a), or when the FAA issues a notice of investigation, *see id.* §§ 16.101, 16.103.  Ultimately, if the parties do not resolve the issue informally, the agency conducts an adjudication before an FAA official and/or a Hearing Officer.  *Id.* § 16.109.  Parties may then appeal to the Associate Administrator for Airports, who issues a final decision.  *Id.* §§ 16.33(b), 16.241.  Final orders in these administrative enforcement proceedings

are subject to judicial review in the courts of appeals.  *See* 49 U.S.C. §§ 46110(a),

47106(d), 47111(d)(3); 14 C.F.R. § 16.247.

## STATEMENT OF FACTS[1]

The Airport North Well and the Hagler Well ("the Wells") are potable water

production wells located within the Pensacola International Airport ("PNS").

Compl. ¶ 8.  ECUA extracts ground water from the Wells and sells the water to its

utility customers.  *Id.* ¶ 11.  ECUA is not paying the City, which is the PNS Airport

Sponsor, for the water.  A 1981 special act by the Florida legislature created

ECUA to "combine the water and sewer systems owned by the City and Excambia

County into one utility authority."  *Id.* ¶ 21 (citation omitted).  The Act "required

the City to transfer its water system to ECUA, and for ECUA to pay the City

$10,000,000 'as fair compensation for the loss of revenues from [the City's water

systems, plus the amount necessary to defease all outstanding obligations of the

city with respect to its water and sewer systems.'"  *Id.* ¶ 22 (citation omitted).  The

City and ECUA entered into a Transfer Agreement, as well as a general Deed and

Bill of Sale, and a Letter of Agreement ("LOA") that addresses access to and use

of the Wells, *id.* ¶¶ 23-31, but the City and ECUA do not agree on the meaning of

these documents.  A dispute about the status of the Wells emerged on May 15,

---

[1]  This brief will treat Plaintiff's concrete factual allegations as true solely for
purposes of this motion.

2013, when ECUA requested that the City convey title to the Wells to ECUA.  *Id.*
¶ 51.  The City alleges that at some point it asked "the FAA" whether it would
approve the conveyance of the airport property surrounding the Wells to ECUA,
and "the FAA" said no.  *Id.* ¶ 55.

By letter dated July 15, 2015, FAA Airport Compliance Specialist Deandra
Brooks reminded the City of its federal obligations, specifically stating that "water
is a revenue-creating resource on federally obligated airports.  Any revenue
derived from the sale or lease of rights in that water is airport revenue."  *Id.* ¶ 58,
Exhibit 13 (ECF No. 1-13).  The letter "strongly encourage[d] the City to develop
a lease or agreement with the ECUA to memorialize the terms associated with the
water wells at PNS," and told the City how to calculate fair market value for the
"use of airport property and any water sold."  *Id.*  The FAA also forwarded to the
City a memo and a letter related to water use issues at other airports in Florida.
*See id.* ¶¶ 57, 59, Exhibits 12 and 14 ( ECF Nos. 1-12 and 1-14).  The July 15,
2015 letter from Brooks to the City concludes, "If the City believes that its
situation is unique and can be readily distinguished from the facts and conclusions
contained in the enclosed legal opinion, we invite the City to provide its own legal
opinion on the matter."  *Id.* ¶ 58, Exhibit 13 (ECF No. 1-13).  The complaint does
not otherwise identify any action by the FAA that the City seeks to challenge or
have set aside.

7

On May 10, 2016 the City filed this action, which contains one count against the ECUA and the FAA.  On June 1, 2016, the City served the federal government with the complaint.  The FAA now moves to have the City's complaint dismissed as to the federal government for the reasons set forth below.

## ARGUMENT

## I.   THE CITY'S COMPLAINT AGAINST THE FAA SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

A case should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure if the Court lacks subject matter jurisdiction.  Under Rule 12(b)(1), plaintiffs bear the burden of proving subject matter jurisdiction by a preponderance of the evidence.  *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002).  In this case the City cannot meet its burden of showing standing, nor can it identify a waiver of sovereign immunity, nor can the Declaratory Judgment Act provide a basis for subject matter jurisdiction.  Further, the City's identification of a defense to an argument that it anticipated it might see from the ECUA, and its assertion (correct though it may be) that that defense is based on federal law, does not provide this Court with jurisdiction.  Any of these four considerations provides a basis for dismissal of the complaint against the FAA.

## A.  The City Has Not Met its Burden of Showing Standing

The City must establish standing to sue under Article III of the Constitution. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  Article III requires a plaintiff to establish: (i) the existence of a concrete injury in fact (ii) that is fairly traceable to defendants' conduct and (iii) which is likely to be redressed by a favorable order from the court.  *Id.*  The City cannot establish any of the three required elements.

### 1.  The City Has Not Incurred an Injury in Fact

As one "irreducible" element of standing, a plaintiff must allege an "injury in fact:" the "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan,* 504 U.S. at 560 (citation and internal quotations omitted).  Article III requires that a plaintiff demonstrate a "certainly impending" future injury from the conduct it seeks to challenge.  *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013).  "'[A]llegations of possible future injury' are not sufficient," because such uncertain allegations render the claim for prospective relief "too speculative for Article III purposes."  *Id.* (citation omitted).

The City has not suffered an injury in fact.  The City's complaint includes three paragraphs that allege injury:

79. The City is being injured by this controversy created by ECUA's claim of entitlement to ownership of the Well sites and the contradiction of ECUA's claim with the AAI Act, federal laws, and associated grant requirements and assurances, and by ECUA's refusal to enter into an FAA-compliant agreement with the City.

*   *   *

81. The City has been placed in a position where it could be subjected to a revenue diversion enforcement action by the FAA in the event the City does not obtain fair market value compensation from ECUA for ECUA's use of, and extraction and delivery of water from, the Hagler and Airport North Wells, the Infrastructure, and the PNS real property surrounding the Wells and Infrastructure.

82. The City is incurring attorneys' fees and costs in dealing with the ECUA and the FAA in an effort to resolve the controversies and claims presented in this action.

Compl. ¶¶ 79, 81, 82.  As to the "injured by this controversy" claim, the City fails to allege any cognizable injury.  The unsettled nature of the "controversy" – that the City and ECUA have not resolved the issues concerning the use of the Wells on airport land or that the City seeks a declaration of the parties' rights from this Court – is not a "concrete injury."  The City is really just repeating that it wants the Court to declare what the law is, and might be saying that it wants an order that the law is in its favor so it can get revenue from ECUA for the Wells.  The City does not allege any specific harm that it is incurring that could be recognized as a basis for standing.

The City's alleged injury based on an FAA enforcement action is too "speculative" to be the basis for standing for prospective equitable relief. *See Lujan*, 504 U.S. at 564. There is nothing "actual or imminent" about this alleged injury. The relevant paragraph of the complaint itself recognizes two contingencies. First, it provides "*in the event* the City does not obtain fair market value compensation from ECUA." Compl. ¶ 81 (emphasis added). Thus, there is no injury if the City and ECUA work out an agreement on compensation for the Wells. Second, it provides that the City "*could be* subjected to a revenue diversion enforcement action by the FAA" if the first contingency is not met. *Id.* (emphasis added). The FAA has not initiated a revenue diversion enforcement action. The complaint does not suggest that the FAA has threatened a revenue diversion enforcement action. The only concrete action identified by the City in this regard is that the FAA sent a letter to the City reminding the City of its "federal obligations with regard to the sale of water taken from the airport," and "encourag[ing] the City to develop a lease or agreement with the ECUA to memorialize the terms associated with the water wells at PNS." Compl. ¶ 58, Exhibit 13 (ECF No. 1-13). The City does not, and cannot, suggest how it might have been injured by that letter.

The City's alleged injury due to its incurring attorneys' fees and costs cannot be the basis for standing. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83,

107 (1998) ("Obviously, however, a plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit.  The litigation must give the plaintiff some other benefit besides reimbursement of costs that are a byproduct of the litigation itself."); *see also Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990) ("interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim").

In short, the City lacks standing because it has failed to meet its burden of demonstrating that it faces a threat of injury that is "real and immediate," not "conjectural" or "hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

### 2. The City Has Not Established That Any Injury Was Caused by the FAA

The City has not alleged, much less demonstrated, that any injury it suffered is "fairly traceable" to conduct by the FAA.  The only FAA actions even referenced by the complaint are an allegation that "counsel for the City asked the FAA whether it would approve the conveyance to ECUA of fee simple title to real property surrounding the [Wells].  The FAA informed counsel for the City that the FAA would not approve the conveyance," that the FAA sent the aforementioned letter reminding the City of its obligations to receive compensation for the use of Airport property and resources, and that the FAA sent the City copies of

12

communications with other Florida cities about similar issues.  Compl. ¶¶ 55, 57-
59.  The City has not alleged that any of these actions by the FAA caused its
alleged injuries.  The claimed injury "created by ECUA's claim of entitlement to
ownership," Compl. ¶ 79, is not fairly traceable to the FAA.  It is the ECUA's
"refusal to enter into an FAA-compliant agreement," *id.*, that is causing the alleged
harm, just as it is the ECUA's position that is causing the "injury" that underlies
the speculation of an enforcement action.

Furthermore, the City's "injuries" (if that is what they are) are harms of its
own making.  The City is not obligated to obtain federal grants to run PNS, so any
injury due to compliance with FAA statutes and grant assurances is an injury of
Plaintiff's own making.

The City has not met its burden of showing that the alleged injuries are
"fairly traceable" to the FAA's actions.

### 3.    A Favorable Ruling Is Not Likely to Redress Any Injury

The City also lacks standing because it cannot demonstrate that it is likely
that any alleged injury will be redressed by a favorable ruling from the Court
against the FAA.  *See Lujan*, 504 U.S. at 561.  In fact, the City does not even seek
any redress from the FAA:  "The City's injuries can be redressed by a judicial
declaration of .  .  . whether, under federal law, ECUA must enter into an FAA-

13

compliant agreement with the City regarding the Wells."  Compl. ¶ 83; s*ee also*
Prayer for Relief ¶ (A) ("Declaring that the LOA is a valid contract . . ."); ¶ (B)
("Declaring that ECUA has no right, title, or interest in or to the PNS real property
surrounding the Hagler and Airport North Wells, except those rights specifically
granted in and subject to the LOA"); ¶ (C) ("Declaring that, due to federal
preemption or otherwise, the City has no unilateral authority to convey title by
deed to ECUA . . . ."); ¶ (D) ("Declaring that ECUA has no right under federal
law, Florida law, the Special Act, or the Transfer Agreement, as modified, to
demand that the City convey title by deed to ECUA . . . ."); ¶ (E) ("Declaring that
the City has fully performed its obligations to ECUA under the Special Act and the
Transfer Agreement . . . ."); ¶ (F) ("Declaring whether ECUA must enter into an
FAA-compliant agreement with the City . . . ."); ¶ (G) ("Declaring whether the
City, as an Airport Sponsor, is legally obligated to impose on and collect from
ECUA a percentage of customer revenues according to the FAA's Water
Extraction Policies . . . ."); ¶ (H) ("Granting any injunctive relief necessary and in
conformance with the Court's declaratory judgment."); ¶ (I) ("Granting the City its
costs"); and ¶ (J) ("Granting the City such further relief as the Court may deem
appropriate.").  Thus, even a favorable ruling from the Court would not result in an
order that the FAA take or refrain from taking any action.

**B.      There is No Waiver of Sovereign Immunity for the City's
         Claim Against the FAA**

For the City to bring a claim against the FAA there must be a waiver of the

federal government's sovereign immunity for such a claim.  *FDIC v. Meyer*, 510

U.S. 471, 475 (1994).  Plaintiff does not cite any basis for a waiver of sovereign

immunity, nor are Defendants aware of any applicable waiver.

In general, the Administrative Procedure Act, 5 U.S.C. §§ 701-706, provides

a waiver of sovereign immunity for claims seeking relief other than money

damages against federal agencies.  However, under controlling case law in this

Circuit, the waiver only exists when the plaintiff seeks judicial review of a final

agency action for which there is no other adequate remedy in court.  *See Nat'l*

*Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1236 (11th Cir. 2003); *see*

*also* 5 U.S.C. §§ 702, 704.  Where there is no final agency action, there is no

subject matter jurisdiction.  *LabMD, Inc. v. FTC*, 776 F.3d 1275, 1277 (11th Cir.

2015).

Just this term, the Supreme Court reiterated that two conditions must be met

for an agency action to be "final" under the APA:  "First, the action must mark the

consummation of the agency's decisionmaking process -- it must not be of a

merely tentative or interlocutory nature. And second, the action must be one by

which rights or obligations have been determined, or from which legal

consequences will flow." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)).  In this case, the complaint, even when read in the light most favorable to Plaintiff, does not include, or even attempt to argue that there has been final agency action by the FAA.  The City seeks a judgment "[d]eclaring whether the City, as an Airport Sponsor, is legally obligated to impose on and collect from ECUA a percentage of customer revenues according to the FAA's Water Extraction Policies" (Prayer for Relief ¶ G) and raises the possibility that the FAA could pursue a revenue diversion enforcement action (Compl. ¶¶ 20, 81), but the complaint does not allege that the FAA has taken any final agency action.  As noted above, the FAA has not initiated an enforcement action, much less reached a final decision on such an action.  The letter from the FAA that the City attaches to the complaint, ECF No. 1-13, makes clear that the FAA has not taken any final agency action.  In the letter, the FAA "encourage[s] the City to develop a lease or agreement with the ECUA to memorialize the terms associated with the water wells" at the airport, and invites the City "to provide its own legal opinion on the matter" if it disagrees with the FAA.  ECF No. 1-13 at 2.  There is no reviewable final agency action that could be the basis for a waiver of sovereign immunity in this case.

16

Even if there were some sort of final agency action by the FAA, this Court would lack jurisdiction because such a final agency action could only be challenged in a court of appeals.  Pursuant to statute:

> [A] person disclosing a substantial interest in an order issued by the Secretary of Transportation . . . in whole or in part under this part [49 U.S.C. §§ 40101-46507], [or] part B [49 U.S.C. §§ 47101-47534] . . . may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business.

49 U.S.C. § 46110(a).  Thus, even if the Court ruled that the City had alleged a final agency action by the FAA, this case should still be dismissed because the City would have to bring that APA action challenging the FAA's final decision in the D.C. Circuit or the Eleventh Circuit.

## C.   The City's Allegation of Preemption as a Defense Cannot Be the Basis for Subject Matter Jurisdiction

The City alleges the Supremacy Clause as a basis for subject matter jurisdiction.  *See* Compl. ¶ 1.  However, the allegations in the complaint only present preemption as a defense to anticipated claims from Defendant ECUA.  Specifically, the City alleges that "an actual conflict exists between *ECUA's demands and contentions* and the City's federal grant assurances and federal law."  Compl. ¶ 71(a) (emphasis added); *see also* ¶ 71(b) ("[t]he City's compliance with *ECUA's demands* regarding the 1981 Transfer Agreement and the general Deed

and Bill of Sale would violate its federal grant assurances and is preempted"
(emphasis added)); ¶ 71(c) ("a direct conflict exists between *ECUA's demands and*
*contentions* and the federal requirements" (emphasis added)).  These
subparagraphs make clear that the *City anticipates raising federal preemption as a*
*defense* to the counterclaims it anticipates ECUA will file (and has now filed) in
response to the City's complaint.  It is well settled, however, that preemption as a
defense cannot be the basis for federal subject matter jurisdiction.  *See Butero v.*
*Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1212 (11th Cir. 1999) ("[a]s an
affirmative defense, defensive preemption does not furnish federal subject-matter
jurisdiction under 28 U.S.C. § 1331"); s*ee also Caterpillar Inc. v. Williams*, 482
U.S. 386, 393 (1987) ("a case may *not* be removed to federal court on the basis of
a federal defense, including the defense of pre-emption, even if the defense is
anticipated in the plaintiff's complaint, and even if both parties concede that the
federal defense is the only question truly at issue.").  However meritorious the
City's position on preemption might be, because the City's preemption arguments
arise as defenses, they cannot be the basis for this Court's subject matter
jurisdiction to hear the dispute.

18

### D.    The Declaratory Judgment Act Does Not Provide a Basis for Subject Matter Jurisdiction

The Declaratory Judgment Act, 28 U.S.C. § 2201, is entitled "Creation of remedy" and provides in relevant part:

> (a) In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

"Of course, it is well established that the Declaratory Judgment Act does not, of itself, confer jurisdiction upon federal courts." *Stuart Weitzman, LLC v. Microcomputer Res., Inc.*, 542 F.3d 859, 861-62 (11th Cir. 2008) (citations omitted).[2]   Rather, it merely provides an additional remedy in cases where jurisdiction is otherwise established. *First Fed. Sav. & Loan Ass'n of Lake Worth v. Brown*, 707 F.2d 1217, 1220 (11th Cir. 1983).   Accordingly, the Declaratory Judgment Act cannot be the basis for federal question jurisdiction in this Court.

### E.    The City Cannot Circumvent the Requirement of Article III Jurisdiction by Alleging that the FAA is a Necessary Party

Federal Rule of Civil Procedure 19 provides for the joinder of "required" parties if:

---

[2] Courts have found federal question jurisdiction if a well-pleaded complaint demonstrates that the defendant could file a coercive action under federal law (*id.* at 862), but Plaintiff here has not met that standard for the reasons set forth above, including that the City has not alleged any final agency action or forthcoming enforcement action. *See supra* I.A.1. and I.B.

that person claims an interest relating to the subject of the action and
is so situated that disposing of the action in the person's absence may:

     (i)  as a practical matter impair or impede the person's ability to
protect the interest; or

     (ii) leave an existing party subject to a substantial risk of
incurring double, multiple, or otherwise inconsistent obligations
because of the interest.

Fed. R. Civ. P. 19(a)(1)(B).  The complaint does not cite Rule 19, nor does it use

the terms "required," "necessary" or "indispensable" party.  Nevertheless,

language in the complaint could be read to be alleging that the FAA is such a party.

The City alleges that "the FAA has an interest in the subject matter of this action,

and disposing of the action in the FAA's absence may impair or impede the FAA's

ability to protect this interest or leave the FAA or the City subject to a substantial

risk of incurring inconsistent obligations because of the interest."  Compl. ¶ 6.

Given this language, the City could well be pursuing this case against the FAA on

the mistaken belief that Rule 19 somehow obviates the need to meet Article III's

jurisdictional requirements.  But even assuming these allegations were true, Rule

19 cannot be used to avoid the requirements of Article III standing and a waiver of

sovereign immunity.

The Supreme Court has held that rules "of procedure 'shall not abridge,

enlarge or modify any substantive right' . . . ." *Amchem Prods., Inc. v. Windsor*,

521 U.S. 591, 613 (1997) (quoting Rules Enabling Act, 28 U.S.C. § 2072(b)); s*ee*

*also* Fed. R. Civ. P. 82 ("These rules do not extend or limit the jurisdiction of the

district courts . . . .").  This fundamental rule means that Rule 19 cannot be used to evade the strictures of Article III.  *See Wilbur v. Locke*, 423 F.3d 1101, 1106–07 (9th Cir. 2005), *abrogated on other grounds by Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010) ("jurisdictional issues should be decided before reaching the Rule 19 issue");  *Hagerty Ins. Co. v. Cummings*, No. 4:08CV1429SNLJ, 2009 WL 1140034, at *3 (E.D. Mo. Apr. 28, 2009) (Rule 19 "was not intended to circumvent Article III jurisdiction.");  *Carson v. City of Bakersfield*, No. CV-F-81-364 REC, 1984 WL 6585, at *3 (E.D. Cal. Aug. 29, 1984) ("In view of this Court's finding that plaintiff . . . lacks standing to raise claims . . . joinder of [other parties and claims], pursuant to Rule 19 of the Federal Rules of Civil Procedure, would be improper.").

Under the law of this Circuit, without standing a plaintiff could not invoke involuntary joinder.  *See Coast v. Hunt Oil Co.*, 195 F.2d 870, 872 (5th Cir.[3] 1952) (holding that plaintiff could not involuntarily join business partner in lawsuit pursuant to Rule 19 to establish standing where plaintiff individually lacked standing to sue).

So too, the Supreme Court indicated that an action cannot proceed where an indispensable party under Rule 19 has a sovereign immunity defense.  *See*

---

[3] The Eleventh Circuit has adopted all pre-September 30, 1981 case law from the Fifth Circuit as precedent.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

*Republic of Philippines v. Pimentel*, 553 U.S. 851, 863-64, 866-67 (2008).  If a

plaintiff has attempted to join a federal agency and there is no waiver of sovereign

immunity, the inquiry for the Court is whether the case may proceed without the

agency.  *See Weeks v. Hous. Auth. of City of Opp, Ala.*, 292 F.R.D. 689, 693 (M.D.

Ala. 2013) ("Because HUD is a required party but cannot be joined in this action

due to sovereign immunity, the Court must next consider whether this action

should be dismissed or allowed to proceed in HUD's absence.").  In this case, there

is no waiver of sovereign immunity for the City's claim against the FAA, and Rule

19 does not grant jurisdiction to the Court where it otherwise is absent.  Thus, even

if the FAA were a necessary party to this action, it must be dismissed because the

Court lacks jurisdiction over the subject matter of this action.

*          *          *

In sum, there are four alternative bases – the City does not have standing;

there is no waiver of sovereign immunity; a preemption *defense* cannot be the basis

for federal question jurisdiction under the Supremacy Clause; and the Declaratory

Judgment Act cannot be the basis for federal question jurisdiction – each of which

independently provides a basis for dismissal of the claim against the FAA for lack

of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

## II.   THE COMPLAINT FAILS TO STATE A CLAIM AGAINST THE FAA

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of any count that fails to state a claim upon which relief can be granted.  The FAA moves for dismissal on this ground, as an alternative to dismissal under Federal Rule of Civil Procedure 12(b)(1).  To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  Although a court must accept all well-pleaded factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff must "allege[] the requisite statutory elements and marshal[] 'enough facts to state a claim to relief that is plausible on its face.'"  *Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1382 (11th Cir. 2010) (quoting *Twombly,* 550 U.S. at 570).  Here, the City fails to allege "both a cognizable legal theory and sufficient facts to support it," so as to "survive a motion to dismiss."  *See Goldin v. Boce Grp., L.C.*, 773 F. Supp. 2d 1376, 1378 (S.D. Fla. 2011) (citation omitted).

### A.    The City Fails to Identify Any FAA Action as the Basis for its Claim

It is difficult to discern from the face of the complaint what, if any, legal theory and facts the City is alleging against the FAA.  Nowhere in the complaint does the City allege that the FAA took an improper action, or even that the FAA is advocating an incorrect position.  The City does not seem to be challenging anything the FAA has said or done with respect to the Wells on the Airport.  The City does not allege any disagreement with any FAA assertion in the letters the City attached to the complaint, *see* ECF Nos. 1-12, 1-13, 1-14.  The complaint sets forth the City's view of the "FAA's Contentions," *see* Compl. ¶¶ 72-76, and the City does not dispute any of them.  Indeed, the relief the City seeks – "The City's injuries can be redressed by a judicial declaration of the parties' rights and obligations that ultimately would resolve these controversies and determine whether, under federal law, ECUA must enter into an FAA-compliant agreement with the City regarding the Wells and Infrastructure, and by the Court granting the relief requested below" [*i.e.*, the Prayer for Relief], Compl. ¶ 83 – is compliance with the FAA's policies, regulations and governing statutes.  The complaint's failure to state a claim for which relief can be granted corresponds with the City's failure to allege Article III standing because there is no allegation of injury inflicted by the FAA or redress needed from the FAA.

### B.     The Declaratory Judgment Act Does Not Provide a Basis for a Claim Against the FAA

The FAA also moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss any claim alleged under the Declaratory Judgment Act.  The sole count in the complaint is titled "Declaratory Relief."  Plaintiff alleges that the action involves "a specific remedy sought under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202."  Compl. ¶ 1.  However, as noted above, the Declaratory Judgment Act does not provide a basis for a cause of action.  *See, e.g.*, *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 33 n.3 (1st Cir. 2007); *Okpalobi v. Foster*, 244 F.3d 405, 423 n.31 (5th Cir. 2001).  Accordingly, the City cannot state a claim under the Declaratory Judgment Act.

## CONCLUSION

For the reasons set forth above, the Court should dismiss any and all claims against Defendants United States Department of Transportation, Federal Aviation Administration and Michael Peter Huerta, the Administrator of the Federal Aviation Administration, for lack of subject matter jurisdiction or for failure to state a claim for which relief can be granted.

August 1, 2016

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
CHRISTOPHER P. CANOVA
United States Attorney
JUDRY L. SUBAR
Assistant Branch Director

*/s/ Susan K. Ullman*
SUSAN K. ULLMAN, DC Bar 426874
Senior Trial Counsel[4]
U. S. Department of Justice, Civil Division
Federal Programs Branch
20 Massachusetts Ave., N.W., Room 7146
Washington, D.C.  20530-0001
Tel: (202) 616-0680/Fax: (202) 616-8470
Email: susan.ullman@usdoj.gov

*Attorneys for Defendants U.S. Department of Transportation, Federal Aviation Administration and the Administrator of the Federal Aviation Administration*

---

[4] Counsel for the federal defendants gratefully acknowledge the contributions of law student intern Brian Shaud (Boston College Law School, Class of 2017) in preparing this brief.

## FEDERAL DEFENDANTS' CERTIFICATION

Pursuant to Local Rule 7.1(F), Defendants United States Department of Transportation, Federal Aviation Administration and Michael Peter Huerta, the Administrator of the Federal Aviation Administration, certify that the Memorandum in support of their Motion to Dismiss is 6,429 words.

*/s/ Susan K. Ullman*
SUSAN K. ULLMAN, DC Bar 426874