**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

CITY OF PENSACOLA,

     Plaintiff,

v.                            CASE NO. 3:16cv203-RV/CJK

EMERALD COAST UTILITIES
AUTHORITY; U.S. DEPARTMENT
OF TRANSPORTATION, FEDERAL
AVIATION ADMINISTRATION; and
MICHAEL PETER HUERTA, in his
Official capacity as Administrator of the
Federal Aviation Administration,

Defendants.
_____/

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**FEDERAL DEFENDANTS' MOTION TO DISMISS COMPLAINT**

Plaintiff, City of Pensacola ("City"), pursuant to Northern District of Florida

Local Rule 7.1(E), responds in opposition to the Federal Defendants' motion to

dismiss the City's Complaint (docs. 28 and 28-1) and states:

<u>Introduction</u>

In the memorandum of law supporting its Motion to Dismiss, Defendants

United States Department of Transportation, Federal Aviation Administration, and

Michael Peter Huerta in his official capacity as Administrator of the Federal

Aviation Administration (collectively "FAA") note that, "[i]f an airport sponsor

- 1 -

accepts an AIP [Airport Improvement Program] grant, but then fails to comply with one of the grant assurances, the FAA may conduct an administrative proceeding against the airport. [Citation omitted]. Such a proceeding can be about airport revenue diversion. [Citation omitted]." The City has accepted an AIP grant from the FAA that provides, in pertinent part:

**C.      Sponsor Certification.**

The sponsor [the City] hereby assures and certifies, with respect to this grant that:

**5.      Preserving Rights and Powers.**

a.      It will not take or permit any action which would operate to deprive it of any of the rights and powers necessary to perform any or all of the terms, conditions, and assurances in this grant agreement without the written approval of the Secretary, and <u>will act promptly to acquire, extinguish or modify any outstanding rights or claims of right of others which would interfere with such performance by the sponsor. This shall be done in a manner acceptable to the Secretary</u>.

Grant Assurances, ¶ 5.a. (emphasis added) (attached as Exhibit A). This litigation exists because the FAA has demanded that the City act promptly under the above-referenced grant, Advisory Circular 150/5100-20 (attached as Exhibit B), and other FAA policy and guidance documents and memoranda attached to the City's complaint regarding deriving revenue from airport property and from the extraction and resale of water from airport property by non-aeronautical users (collectively, the "Policies") to address the Emerald Coast Utilities Authority's

("ECUA") failure to pay fair market value and concession fees for its use of the City's airport property and resources. The FAA (the "rock") has pushed the City up against the ECUA (the "hard place"), but now wants to disavow any role or reason for its participation in this proceeding. However, as quoted above, the Grant Assurances require the City to resolve this dispute "in a manner acceptable to" the FAA. Thus, the issues in this litigation cannot be resolved by the City without the approval, and therefore the participation, of the FAA.

Also, and with the FAA's full knowledge, the City has spent countless man-hours and tens of thousands of dollars in fees and costs in attempting to carry out its obligations under the Grant Assurances and in transparently responding to repeated demands for progress updates from the FAA. Failed attempts at two mediations between ECUA and the City (the FAA was invited to the last pre-suit mediation, but declined to attend in person or by telephone) resulted in the City notifying and discussing with the FAA that litigation would be necessary to resolve the dispute.

The nature of this controversy – and it is a controversy – is that ECUA claims it owns or should be deeded the airport property on which ECUA's Airport North and Hagler wells sit. The City asserts it did not, and never agreed to, convey airport property surrounding these wells to ECUA, because it was not part of the City's water system and because the City was prohibited from doing so by FAA

law and the Policies, which preempt any alleged legal or contractual requirement to do so.

As the FAA notes in its memorandum (doc. 28-1), the FAA requires that its airport sponsors – PNS in this case – receive "fair market value for the provision of nonaeronautical facilities and services . . . ." 64 Fed. Reg. 7696, 7721 (February 16, 1999). The FAA acknowledges that "[f]ailure to comply with these requirements can be 'revenue diversion,' which is defined as 'the use of airport revenue for purposes other than the capital or operating costs of the airport . . . .'" Doc. 28-1, pp. 6-7 (citing 64 Fed. Reg. at 7720). Grant assurances also subject airport sponsors to restrictions on conveying airport property. *See* 49 U.S.C. §§ 47107(a)(16)(D), 47151-53. Any airport property conveyed must be "surplus" to the requirements of the airport, 49 U.S.C. § 47151, and the FAA must certify that the conveyance "can be used, leased, salvaged, or disposed of without materially and adversely affecting the development, improvement, operation, or maintenance of the airport at which the property is located." 49 U.S.C. § 47152.

On July 15, 2015, the FAA's Airport Compliance Office sent the City a letter providing:

> We strongly encourage the City to develop a lease or agreement with the ECUA to memorialize the terms associated with the water wells at PNS. This document should establish the base Fair Market Value rate for the ECUA's use of airport property and any water sold consistent with the Revenue Use Policy.

Doc. 1, Ex. 13 (emphasis added). The FAA also provides in its memorandum evidence of the strong push the FAA has been making in Florida on the water revenue issue. *See* Doc. 1, Exs. 12-14. In short, this litigation is a direct result of the FAA's real and immediate threat to institute a revenue diversion action against the City if it does not legally resolve, to the FAA's satisfaction and pursuant to the FAA's Policies, ECUA's refusal to both lease the airport property upon which the ECUA wells is located and pay the City for the water extracted from the wells. This substantial controversy, between parties having adverse legal interests, is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *GTE Directories Pub. Corp. v. Trimen America, Inc.*, 67 F.3d 1563, 1567 (11th Cir. 1995). And the FAA's Policies at issue in this proceeding constitute final agency action subject to district court review under the Administrative Procedure Act.

**I. The Court has Jurisdiction Over the City's Claims Against the FAA.**

A.  <u>The City Has Alleged Article III Standing</u>

Article III requires a plaintiff to establish: (i) the existence of a concrete injury in fact (ii) that is fairly traceable to defendants' conduct and (iii) which is likely to be redressed by a favorable order from the court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). As one "irreducible" element of standing, a plaintiff must allege an "injury in fact": the "invasion of a legally protected interest

which is (a) concrete and particularized, and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560 (citation and internal quotations omitted). Article III requires that a plaintiff demonstrate a "certainly impending" future injury from the conduct it seeks to challenge. *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013). In contesting the City's standing, the FAA ignores its own case law, focusing solely on "actual" and disregarding "imminent." The City's injury is "imminent"; i.e., if the revenue issue is not quickly resolved, a revenue diversion action has been threatened and is immediately forthcoming. Also, the City has been bearing, and will continue to bear, the monetary burden of this litigation and resolution of the dispute with ECUA.

This imminent injury will be addressed by a favorable order of the Court. The City has asked the Court to declare that the City owns the real property surrounding the wells and declare that the City is required to collect rent and concession fees for ECUA's use of the property and the production and sale of water from it. With this order, the City can meet its grant assurance obligation to extinguish ECUA's claim against the airport property and avoid the FAA's threatened revenue diversion action.

The instant case is similar to *National Basketball Ass'n v. SDC Basketball Club,* 815 F. 2d 562 (9th Cir. 1987), a case relied upon in *GTE Directories Pub.*

*Corp.*, 67 F.3d at 1568-69. In the *NBA* case, the former San Diego Clippers moved their franchise from San Diego to Los Angeles without NBA approval. The NBA opposed the move, but took no immediate action against the Clippers because the Clippers threatened to sue the NBA for antitrust violations if it took action adverse to the move. *GTE*, 67 F.3d at 1568-69. The NBA later filed a declaratory judgment action seeking a declaration that it could investigate the Clippers' move and sanction the Clippers for violating NBA rules without violating antitrust laws. The Clippers responded, arguing that, "since the NBA ha[d] taken no affirmative action to sanction [them] or deny them scheduling rights in Los Angeles, the issues of the case [were] not sufficiently refined to allow federal jurisdiction." *Id.* (citing *NBA*, 815 F. 2d at 565).

The court disagreed with the Clippers and found that an actual case or controversy existed between the parties, holding:

> The NBA's claims meet the requirements of the test. The Clippers' . . .
> alternative formulation of case and controversy would force the NBA
> to impose a fine or sanction on the Clippers before an action could
> accrue. This is the type of Damoclean threat that the Declaratory
> Judgment Act is designed to avoid. Since the NBAs "real and
> reasonable apprehension," was that any action on the Clippers' move
> could result in antitrust liability, the case is justiciable.

*Id.* (citing *NBA*, 815 F. 2d at 566). The City is under the same Damoclean threat from the FAA and seeks to remove this threat by attempting to resolve this controversy through its declaratory judgment action against ECUA and the FAA.

B.    <u>The FAA has Waived Sovereign Immunity</u>.

The Administrative Procedure Act, 5 U.S.C. § 701, et seq. ("APA"), waives sovereign immunity for all non-monetary challenges to agency action. *See, e.g., Muniz-Muniz v. U.S. Border Patrol*,  741 F. 3d 668 (6th Cir. 2013) ("we now join all of our sister circuits who have done so in holding that § 702's waiver of sovereign immunity extends to all non-monetary claims against federal agencies and their officers sued in their official capacity, regardless of whether plaintiff seeks review of 'agency action' or 'final agency action' as set forth in § 704."). The FAA argues that it has taken no final agency action here, because the FAA has merely "encourage[d] the City to develop a lease or agreement with ECUA to memorialize the terms associated with the water wells at the airport." The FAA further argues, incredibly, that "[t]he City is not obligated to obtain federal grants to run PNS, so any injury due to compliance with FAA statutes and grant assurances is an injury of Plaintiff's own making." But the City <u>has</u> obtained federal grants that require the City to take this action against ECUA to the satisfaction of the FAA or suffer severe penalties if it does not. And under the APA, the City is entitled to have this Court declare whether or not the FAA's Policies and guidance apply to the wells operated on Airport Property by ECUA.

As the Supreme Court held in *U.S. Army Corps of Engineers v. Hawkes Co., Inc.*, 136 S. Ct. 1807, 1816 (2016),

> As we have long held, parties need not await enforcement proceedings before challenging final agency action where such proceedings carry the risk of "serious criminal and civil penalties." *Abbott,* 387 U.S., at 153, 87 S.Ct. 1507. . . . Respondents need not assume such risks while waiting for EPA to "drop the hammer" in order to have their day in court.

This is particularly true when challenging policies or guidance that an agency applies when deciding whether to initiate enforcement proceedings:

> Texas is not, however, simply challenging the prospect of an investigation by the EEOC. Instead, it is challenging the Enforcement Guidance itself, which represents the legal standards that the EEOC applies when deciding when and how to conduct such an investigation, and what practices may require charges. The Guidance is an agency determination in its final form and is applicable to all employers nation-wide; it is not an intermediate step in a specific enforcement action that may or may not lead to concrete injury.

*Texas v. Equal Employment Opportunity Commission*, 2016 WL 3524242, *10 (June 27, 2016). Likewise, the City is asking this Court to declare whether the FAA's grant assurances, policies, and "guidance" in the form of its definitive determination of what practices it mandates in its "advisory circulars" (which subject the City to substantial legal consequences[1], *see supra* at 1-5) require the

---

[1] The Supreme Court in *Hawkes Co., Inc.* 136 S.Ct. at 1813 ruled*:*

> In *Bennett v. Spear,* 520 U.S. 154, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997), we distilled from our precedents two conditions that generally must be satisfied for agency action to be "final" under the APA. "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.,* at 177–178, 117 S.Ct. 1154 (internal quotation marks and citation omitted).

City to demand that ECUA pay fair market value for the property and water extracted from it.

Further, and precisely because the FAA has not chosen to institute an enforcement action or otherwise issue an administrative order in this proceeding, the City has no recourse under 49 U.S.C. § 46110(a).

In the alternative, the FAA's sovereign immunity also has been waived by the Tucker Act (28 U.S.C. § 1491) and the Little Tucker Act (28 U.S.C. § 1346) for any claim against the United States for money damages exceeding $10,000 that is "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." *Eastern Enterprises v. Kenneth S. Apfel, Commissioner of Social Security, et al.*, 524 U.S. 498, 520 (1998). In the plain offer and acceptance language of the most recent grant between the City and the FAA regarding the Airport (which includes the grant assurances cited in the FAA's Memorandum), the FAA makes it clear that the grant assurance documents are a contract between the City and the FAA. *See* Exhibit A.

The Little Tucker Act mirrors the Tucker Act, but is for actions involving damages less than or equal to $10,000. In *Eastern Enterprises*, the Supreme Court recognized district courts' power to ignore the lack of compensatory damages

under the Tucker Act and afforded jurisdiction for equitable Tucker Act claims against the Government. *See Eastern Enterprises,* 524 U.S. at 520-522.

In clarifying its jurisdiction over the plaintiff's declaratory judgment and injunction claims, the Court considered that the plaintiff did not seek monetary damages against the Government and also recognized that "some Courts of Appeal have accepted the view that the Tucker Act does not apply to suits seeking only equitable relief . . . ." *Id.* at 520-521. However, the *Eastern Enterprises* court noted that, as in the instant case, "it cannot be said that monetary relief against the Government is an available remedy" and found jurisdiction, holding: "Based on the nature of the taking alleged in this case, we conclude that the declaratory judgment and injunction sought by petitioner constitute an appropriate remedy under the circumstances, and that it is within the district courts' power to award such equitable relief." *Id.* at 521-522.

Similarly, assuming a properly pleaded amended complaint by the City, this Court's jurisdiction over the City's claim is supported by the fact that the City has clear regulatory and contractual obligations to the FAA to "act promptly to acquire, extinguish or modify any outstanding rights or claims of right of others which would interfere with such performance by the sponsor. This shall be done in a manner acceptable to the Secretary." Exhibit A, Grant Assurance, ¶ 5.a. As noted above, the City's course of conduct leading up to the filing of its complaint has

been with utmost transparency to the Federal Defendants. It is axiomatic that, pursuant to the same grant assurance provision cited above, the FAA has an inherent contractual obligation of good faith and fair dealing to participate in and to lend its full support to promptly and efficiently resolve this dispute, now litigation. To date, it has not done so.

For example, FAA filed its motion to dismiss in this case even though it could have taken the good faith and fair dealing path of answering the Complaint as it did in another case, *City of Oceanside v. AELD, LLC,* 740 F.Supp.2d. 1183 (9th Cir. 2010). And, the FAA refused to participate in or assist the City in preparing for the most recent pre-suit mediation. However, the FAA recently agreed to the City's Consent Motion for Stay (doc. 31) pending before the Court, which is an encouraging development.

This Court does not have to reach beyond *Eastern Enterprises* to find jurisdiction to fully resolve this case in the most efficient manner without risking future conflicting or unnecessary administrative actions or orders involving the parties. Alternatively, if the Court does not allow the City to amend its complaint and excuses the FAA from this case, the City would like to amend, and requests to amend, its complaint to request a declaration of the nature and extent of its obligation to resolve the instant dispute with ECUA "in a manner acceptable to the Secretary."

## II. The Complaint States a Claim Against the FAA.

As discussed in Section I, above, the City has alleged a claim against the FAA. The City has alleged that it is under imminent threat of a revenue diversion action, and that it is in doubt about the application to the City's property of FAA grants, policies, and guidance concerning deriving revenue from airport property and whether it is required to apply these policies to the ECUA wells at issue. This claim is cognizable under the APA and/or Little Tucker Act, and the declaratory judgment statute authorizes this Court to make that declaration and grant the City its requested relief.

WHEREFORE, Plaintiff, City of Pensacola, requests that the Court deny the Federal Defendants' motion to dismiss the City's complaint.

Respectfully submitted this 29th day of August, 2016.

/s/ John L. Fiveash
John L. Fiveash
Florida Bar No.: 716571
Edwin A. Steinmeyer
Florida Bar No.: 883920
STEINMEYER FIVEASH LLP
310 West College Avenue
Tallahassee, Florida 32301
Telephone: (850) 270-6990
jlf@steinmeyerfiveash.com (primary)
eas@steinmeyerfiveash.com (primary)
jrs@steinmeyerfiveash.com (secondary)

-and-

- 13 -

John P. Daniel
Florida Bar No.: 784291
Ralph A. Peterson
Florida Bar No.: 303021
BEGGS & LANE, RLLP
Post Office Box 12950
501 Commendencia Street
Pensacola, Florida 32502-5953
Telephone: (850) 432-2451
jpd@beggslane.com (primary)
rap@beggslane.com (primary)
msk@beggslane.com (secondary)
brm@beggslane.com (secondary)
jd@beggslane.com (secondary)

*Attorneys for Plaintiff City of Pensacola*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served electronically by the Court's ECF system this 29th day of August, 2016, on:

Robert N. Clarke, Jr., Esq.
Martin B. Sipple, Esq.
AUSLEY & McMULLEN, P.A.
123 South Calhoun Street
P.O. Box 391 (zip 32302)
Tallahassee, Florida 32301

Susan K. Ullman, Esq.
U.S. Department of Justice
20 Massachusetts Avenue, NW
Washington, D.C. 20530

/s/ John L. Fiveash
Attorney